## JOSEPH DURAND v. ARNOLD HALBACH AND GEORGE HALBACH, TRADING UNDER THE FIRM OF HALBACH BROTHERS.

September 14, 1835.

### *Rule to show cause why the judgment should not be set aside.*

The privilege of a foreign consul is not personal, but is the immunity of the country or government which the consul represents.  It cannot be waived by a consul's omitting to plead it, or by his withholding the suggestion of it till after judgment.

Nor can such privilege be destroyed by the consul's being joined as defendant with others not entitled to the same.

The court will grant relief, on *motion,* wherever the writ of *audita querela* will lie, but it is too late to apply for such relief by *motion,* after plea and judgment.   In such case, relief can only be obtained by a writ of error *coram nobis.*

A writ of error *coram nobis* described.

[Durand v. Halbach et al.]

THIS case was argued by *Jones,* for plaintiff; and *Purdon,* for defendant; and the opinion of the Court, which, being full, renders any further statement of the case unnecessary, was delivered by

PETTIT, *President.*—This was an action on the case, brought to December term 1829.    The writ was returned " summoned." The cause was regularly put at issue on the plea of *non assump-serunt,* and of discharge under the insolvent laws of this state.    While at issue, it was arbitrated under the act of 1810; and on the 29th of December 1830, judgment was entered on the award of arbitrators for 3038 dollars 72 cents.    On the 8th of January 1834, the judgment was assigned to P. Bousquet, and marked to his use.

No further step was taken by either party, until the 10th of January 1835, when the defendant's counsel, upon affidavit filed, obtained a rule on the plaintiff to show cause why the judgment should not be set aside.

The following suggestion was filed of record, viz. :

" Rule to set aside the judgment on the ground that Arnold Halbach, one of the above named defendants, was, at the time of the commencement of the above suit, and has ever since continued to be, and now is, consul for the Burgomaster and Council of the free city of Frankfort, on the Maine, for Philadelphia, in the United States, duly recognised and declared to be such by the president of the United States;—and that on the 9th of July 1830, he was duly recognised and declared by the president of the United States to be consul of his majesty, the king of Prussia, for the port of Philadelphia, and still is such consul;—that being such, he ought not, according to the constitution and laws of the United States, to have been impleaded in this district court for the city and county of Philadelphia, the same being a state court, but in the United States court, where the constitution and laws of the United States have placed the jurisdiction in his case; and that said district court for the city and county of Philadelphia had not, and has not jurisdiction, and ought not to have cognizance of the above case; and this he is ready to verify.    Wherefore he prays the court that the judgment in the above case may, for the causes above assigned, be annulled, made void, and set aside."

The plaintiff's counsel, in opposition to the rule, made the following points:

1. That this judgment cannot be set aside on mere motion.

2. That the objection to the jurisdiction should have been made before judgment.

[Durand v. Halbach et al.]

3. That the joinder of Arnold Halbach with George Halbach, ousts the jurisdiction of the United States courts.

These propositions do not deny, or in any manner contravene, the general doctrine, which is unquestionably true, that a state court cannot entertain jurisdiction of civil suits against foreign consuls. The second section of the third article of the constitution of the United States declares that " the judicial power of the United States shall extend to all cases affecting ambassadors, other public ministers *and consuls*;" and the ninth section of the judiciary act of 1789, gives to the district courts of the United States, "jurisdiction, *exclusively* of the courts of the several states, of all suits against consuls or vice consuls," except for certain offences mentioned in the act.

The exemption thus asserted is not personal. It is the immunity of the country or government which the consul represents. As the constitution of the United States comprehends ambassadors and consuls in the same provision, it clearly recognises the application to the case of consuls, of that familiar principle of the law of nations by which the privilege of an ambassador is deemed to be that of his country. Were express authority wanted for this view of the subject, it is to be found in the case of Davis *v.* Packard, 7 *Peters's Rep.* 284.

If the privilege of a foreign consul could be held to be personal, one of the positions of the plaintiff's counsel might derive some support from the case of Bosbyshell *v.* Oppenheimer, 4 *Wash. C. C. Rep.* 484, in which it was ruled, that after trial on the merits, and after a judgment, an objection to the jurisdiction, which might have been previously made, could not be insisted upon to avoid the judgment. The privilege, as a *national* one, however, could not be waived by a consul's omitting to plead it, or by his withholding the suggestion of it till after judgment. For the same reason the principle recognised in Beardsley *v.* Torrey, 4 *Wash. C. C. Rep.* 228, that where there are several defendants, each must be competent to be sued in the United States courts, does not apply.

There is nothing, therefore, in either the second or third points made in opposition to this application.

But it is contended that, should the court admit, in the most unqualified manner, the exemption of a foreign consul from liability to their jurisdiction, and disregard all implied or constructive waivers, yet that they will not set aside this judgment on mere *motion*.

After what has been said, it follows, that the court will, in some

[Durand v. Halbach et al.]

form of proceeding, on proper proof of the fact of consulship, grant relief; and whether this can be done on the application now made, has caused the only real difficulty in the case.

It has been urged that nothing can now be inquired into upon motion, which could not formerly have been examined on *audita querela*; and that relief would have been granted on *audita querela*, only in a case where injustice was apparent, and relief could not have been obtained on plea.

It was said by Mr Justice Duncan, in delivering the opinion of the court in Share *v.* Becker, 8 *Serg. & Rawle* 242, that wherever the writ of *audita querela* would lie, the court would grant relief on *motion*: and that the course of granting summary relief has driven out of use the ancient writ. The practice of this court has been in conformity with this remark.

It is clear, then, that if an *audita querela* relief could have been awarded, it can be granted upon the application now made.

The general rule, as laid down in 1 *Comyn's Digest* 787, *tit. Audita Querela*, C, and recognised by the American cases there cited, is, that where the party had time to take advantage of the matter which discharges him, and neglects it, he cannot afterwards be helped by an *audita querela*. Were this test to be applied in the case before us, *audita querela* would not lie : and should the power of the court to interfere, on *motion*, be restricted to the same limits, the present application would also, of course, be denied.

Is there then any authority to show that the courts have gone further on mere *motion*, than on *audita querela?* None has been produced. Is there any authority upon which the court can direct the plaintiff to plead to the suggestion now for the first time filed, so that the matter alleged can be examined into? We know of none. In the case of Hill *v.* West et al. 4 *Yeates* 385, in which judgment had been entered in 1804, and a suggestion was afterwards filed that two of the three defendants had died several years before the date of the judgment, the supreme court of Pennsylvania expressly refused to grant a rule on the plaintiff to plead to the suggestion: and while they declined directing what course should be taken, no inference can be drawn from the intimation thrown out by the court, except that a writ of error *coram nobis* should have been resorted to as the only other mode of obtaining relief.

The writ of error *coram nobis* was designed to enable a court which had committed no error in matter of law, to inquire whether they

I.—G

[Durand v. Halbach et al.]

have, in consequence of an *error in fact*, given a judgment which, but for that error, would not have been pronounced ; and if the error in fact is admitted, or found to exist by the verdict of a jury upon an issue joined thereon, then to revoke said judgment.

The court of common pleas of this county, in the year 1808, then exercising the jurisdiction which now belongs to this court, decided, and we think correctly, that they had power to issue such a writ ; and the death of a defendant before judgment being under such a proceeding made to appear, reversed one of their own judgments. Day *v.* Hamburgh, 1 *Browne's Rep.* 75.

That the very matter of fact suggested here is proper to be inquired into upon such a writ, has been determined in the case of Davis *v.* Packard, 8 *Peters's Rep.* 312. Judgment had been rendered in the supreme court of New York against Davis. He prosecuted a writ of error to the court for the correction of errors of the state of New York, and assigned for error what did not appear on the record, that he was, when the suit was instituted, and had ever since continued to be, consul-general of his majesty the king of Saxony, in the United States, and ought, according to the constitution and laws of the United States, to have been impleaded in the supreme court of the United States, or in some district court of the United States, and that the said supreme court of the state had not jurisdiction, and ought not to have taken to itself the cognizance of the said cause. The history of the case is somewhat remarkable, but it is sufficient for our present purpose to state, that after the record had been twice carried up to the supreme court of the United States, it was found that the only mode of giving the defendant relief, was to send him back to the supreme court of New York, that he might by suing out and prosecuting a writ of error *coram nobis*, establish the fact of his consulship, and obtain in that court a reversal of their own judgment.

Whether the proper exhibition of the proof of foreign consulship, as to one defendant, will avail the other, is a question upon which no opinion is intimated. The court will consider that point, should it be presented.

The remedy just pointed out being, in the opinion of the court, the true one, the defendant's counsel takes nothing by his present motion.

Rule discharged.